# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 18-240


**STATE IN THE INTEREST OF C.D.W.**

**VERSUS**

**T.R.W.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 30015
HONORABLE LILYNN A. CUTRER, DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\*\***


## MARC T. AMY
## JUDGE


**\*\*\*\*\*\*\*\*\*\***


Court composed of Marc T. Amy, John E. Conery, and Van H. Kyzar, Judges.


**AFFIRMED.**

**Walter M. Sanchez**
**The Sanchez Law Firm, L.L.C.**
**1200 Ryan Street**
**Lake Charles, LA   70601**
**(337) 433-4405**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana, Department of Children & Family Services**
    **C.D.W.**

**Shane Hinch**
**The Larry Roach Law Firm**
**2917 Ryan Street**
**Lake Charles, LA   70629**
**(337) 433-8504**
**COUNSEL FOR APPELLEES:**
    **State of Louisiana, Department of Children & Family Services**
    **Jack Bernsmeier**
    **Melanie Bernsmeier**

**LaKetha Holmes**
**Holmes Family Law Group, L.L.C.**
**112 North Stewart Street**
**DeRidder, LA   70634**
**(337) 221-3028**
**COUNSEL FOR APPELLANT:**
     **T.R.W.**

**AMY, Judge.**

Through appointed counsel for the subject minor child, the State sought termination of the parental rights of the child's biological mother on the ground of abandonment as provided by La.Ch.Code art. 1015(5). Following a hearing, the trial court entered the termination of parental rights and certified the child eligible for adoption. The biological mother appeals. For the following reasons, we affirm.

### Factual and Procedural Background

C.D.W.[1] was born to T.R.W., his mother, in June 2009. However, due to T.R.W.'s cocaine use and C.D.W.'s exposure thereto, the minor child was taken from T.R.W.'s custody and was placed in the custody of the State of Louisiana, Department of Children and Family Services. The child was initially placed in the care of foster parents, J.B. and M.B., for the first months of his life. An August 2009 case plan advanced the goal of the child's reunification with T.R.W. In 2010, C.D.W. was placed in the custody of his maternal grandmother, M.W., although J.B. and M.B. maintained visitation with him during that period. The State issued a new case plan for reunification in September 2010, but, according to the trial court, the State was released from supervision of the case at the end of that month.

Then, by judgment dated June 2, 2015, J.B. and M.B. were granted joint custody, along with M.W. At that time, J.B. and M.B. were designated domiciliary parents of C.D.W. As reported by the trial court, however, J.B. and M.B. were awarded sole custody of the child following a December 2015 hearing.

---

[1] The initials of the parties are used to ensure the confidentiality of the minor as required by Uniform Rules—Courts of Appeal, Rules 5-1 and 5-2.

This matter was instituted on February 1, 2017 with the filing of a "Petition for Termination of Parental Rights Pursuant to Louisiana Children's Code Article 1015(4)." By that petition, the State sought the appointment of Walter Sanchez to "bring this action to terminate on behalf of the minor child" per La.Ch.Code art. 607 and to authorize him to bring the action to terminate the parental rights of T.R.W. pursuant to La.Ch.Code art. 1004(B) and (F).[2]

The petition advanced La.Ch.Code art. 1015(5)[3](a), (b), and (c) as grounds for termination insofar as T.R.W.'s whereabouts were unknown for more than four months and:

> [S]he has failed to provide significant contributions to the care and support of the minor child for more than six (6) consecutive months; and, as of the time of filing of this petition, has failed to maintain significant contact with the minor child in that she has failed to visit or communicate with the minor child since December of 2015.

The petition noted that Mr. Sanchez was privately retained.

In its corresponding order, the trial court appointed Mr. Sanchez as counsel for the child and granted him the authority to bring the termination action pursuant

---

[2] Titled "Petition for termination of parental rights; authorization to file[,]" La.Ch.Code art. 1004 provides, in pertinent part:

> B. Counsel appointed for the child pursuant to Article 607 may petition for the termination of parental rights of the parent of the child if the petition alleges a ground authorized by Article 1015(5), (6), or (7) and, although eighteen months have elapsed since the date of the child's adjudication as a child in need of care, no petition has been filed by the district attorney or the department.
>
> . . . .
>
> F. By special appointment for a particular case, the court or the district attorney may designate private counsel authorized to petition for the termination of parental rights of the parent of the child on the ground of abandonment authorized by Article 1015(5).

[3] While the petition designates Article 1015(4) as the pertinent paragraph for the ground asserted, 2016 La. Acts. No. 608, § 1 inserted a new paragraph 3, and thereafter, re-designated former paragraph (3) through (8) as paragraphs (4) to (9). The petition was orally amended in this regard at the termination hearing.

to La.Ch.Code art. 1004(B) and (F). As reported below, the trial court further appointed counsel to represent T.R.W.

The parties thereafter appeared at a pre-trial hearing in April 2017, by which time T.R.W. was represented by retained counsel. The trial court's order from that date further recognized that T.R.W. was served in open court with the petition for termination of parental rights and that she "accepted service, waiving any informality with regard to the manner of delivery." The order further noted that T.R.W. entered a denial to the petition.

The merits of the termination matter proceeded to a June 2017 hearing. In written reasons for ruling, the trial court found that the ground of abandonment was proven[4] by clear and convincing evidence and explained that, with regard to parental abandonment:

> The undisputed evidence presented at trial indicated that [T.R.W.] has not provided any support for [C.D.W.] and has failed to communicate or visit with [C.D.W.] for a period far in excess of six months. [C.D.W.] was removed from [T.R.W.]'s care and placed in the State's custody due to crack cocaine in her and [C.D.W.]'s system at birth. [C.D.W.] went straight from the hospital into the State's custody and the … home [of J.B. and M.B.]. [T.R.W.] has never had custody of [C.D.W.] and he is now 7 (almost 8) years old. She was a given a case plan but never worked it.
>
> [T.R.W] acknowledged at trial that she has made no effort to contact [J.B. and M.B.] to see [C.D.W.] prior to the petition to terminate her rights was filed. She also admits that she has never provided any financial support for [C.D.W.] either.

Given those observations, the trial court concluded that T.R.W. abandoned the child "by placing him in the care of another" and that she "failed to provide support for him and failed to visit or communicate with him for a period in excess of six months." The trial court's subsequent best interests of the child analysis

---

[4] While the trial court expressed the burden of proof as having been met by J.B. and M.B., the petition is clear that it was filed by the State, on behalf of the minor child.

3

addressed both T.R.W.'s longstanding drug problem, and C.D.W.'s care by J.B. and M.B. The trial court explained that T.R.W. had been successful in her most recent rehabilitation program, but further recognized her years of drug use and inability to parent. By contrast, the trial court identified that C.D.W. was closely bonded with J.B. and M.B., that they had provided him with a safe and stable home, and that they had provided for medical and mental health needs. In light of these factors, the trial court explained that termination of parental rights was in the best interests of C.D.W.

By final judgment of December 21, 2017, the trial court commemorated its findings, terminating the parental rights of T.R.W. to C.D.W. pursuant to La.Ch.Code art. 1015(5). The trial court further ordered that C.D.W. remain in the custody of J.B. and M.B. and that the minor child was eligible for adoption. *See* La.Ch.Code art. 1037.

T.R.W. appeals, asserting that the trial court erred in: 1) permitting the appointment of counsel for the minor child when counsel previously served as counsel for J.B. and M.B.; 2) ordering the termination due to failure to comply with La.Ch.Code art. 1020; and in 3) finding that the burden of proof for termination was satisfied.

## Discussion

*Appointment of Counsel*

T.R.W. first questions the trial court's appointment of Mr. Sanchez as counsel for C.D.W. and argues that the appointment posed an inherent conflict insofar as Mr. Sanchez had been counsel for J.B. and M.B. "since the case

4

inception." In support of the argument, T.R.W. references La.Ch.Code art. 1016, which, at the time of Mr. Sanchez's appointment in February 2017,[5] provided that:

> A.  The child and the parent shall each have the right to be represented by *separate* counsel in a termination proceeding brought under this Title.  Neither the child nor anyone purporting to act on his behalf may be permitted to waive the child's right to counsel.

(Emphasis added.).  Referencing jurisprudence regarding the distinct interests involved in a termination of parental rights matter, T.R.W. suggests that the attendant "careful balancing act was overlooked by appointment of special counsel as [Mr.] Sanchez, given his close connectivity to [J.B. and M.B.] and their goal to hinder reunification efforts for the minor child, C.D.W. with the biological parent, [T.R.W.] or for that matter with any of the minor child's maternal relatives[.]"

Following review, however, we find no merit in T.R.W.'s claim.  First, as noted by C.D.W., no party lodged an objection to the petition for appointment of Mr. Sanchez in the court below and, thus, the trial court did not address the conflict issue now presented.  *See* Uniform Rules—Courts of Appeal, Rule 1-3 (providing, in part, that:  "The Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise.").  *See also Council of City of New Orleans v. Washington*, 09-1067, p. 3 (La. 5/29/09), 9 So.3d 854, 856 (wherein the supreme court explained that:  "The well-settled jurisprudence of this court establishes that as a general matter, appellate courts will not consider issues raised for the first time, which are not pleaded in the court below and which the district court has not addressed.").

---

[5] With an effective date of August 1, 2017, 2017 La. Acts No. 239, § 1 amended the first sentence of La.Ch.Code art. 1016(A), which, as amended, provides that:  "A. The child and the identified parent shall each have the right to be represented by separate counsel in a termination proceeding brought under this Title."

It is noteworthy that T.R.W's argument stems from language indicating that "[t]he *child* and the *parent* shall each have the right to be represented by *separate* counsel in a termination proceeding brought under this Title." La.Ch.Code art. 1016(A) (emphasis added). In this case, T.R.W. complains not of original representation of herself, as the parent, and subsequent representation of the child. She instead complains that Mr. Sanchez formerly represented J.B. and M.B. and was subsequently appointed to represent T.R.W.[6] By its wording, Article 1016(A) does not address that situation. Neither is T.R.W.'s reference to La.Ch.Code art. 607[7] persuasive as that provision is contained within Louisiana Children's Code, Title VI (Child in Need of Care). By contrast, this matter arises under Title X (Judicial Certification of Children for Adoption).

For these reasons, we leave the trial court's appointment of counsel for C.D.W. undisturbed.

*Notice*

We similarly find that T.R.W.'s second argument is not preserved for review. By this argument, T.R.W. asserts that when presented with the initial petition in this matter, the document did not contain the notice required by La.Ch.Code art. 1020.[8] While the record does not indicate such notice was

---

[6] The record indicates that, at the time of the termination proceedings at issue, J.B. and M.B. were represented by Shane Hinch.

[7] Louisiana Children's Code Article 607(A) provides that: "The court shall appoint the program designated for the jurisdiction by the Louisiana Supreme Court to provide qualified, independent counsel for the child at the time the order setting the first court hearing is signed. Neither the child nor anyone purporting to act on his behalf may be permitted to waive this right."

[8] Louisiana Children's Code Article 1020 provides:

Notice shall be issued by the clerk and served, together with a copy of the petition, on every parent against whom a proceeding is instituted under this Title and shall state:

6

provided pursuant to the Article, the petition indicated that T.R.W. was an absentee

parent "who no longer resides at her last known address[.]" Thus, it further sought

an order "[a]ppointing an attorney at law to represent the absentee defendant,

[T.R.W.], upon whom service can be made and against whom these proceedings

conducted contradictorily." The trial court thereafter appointed an attorney "to

represent the interests of the absentee defendant, [T.R.W.], in these proceedings,

upon whom service shall be made and against whom these proceedings conducted

contradictorily." The resulting sheriff's return indicates that appointed counsel for

T.R.W. was served with the petition.[9]

---

"NOTICE

Louisiana law provides that you can permanently lose your rights as a parent. A petition has been filed requesting the court to terminate your parental rights to your child. A copy of the petition is attached to this notice. A court hearing of your case has been scheduled for the _____ day of _____, _____ at the _____ division of _____ court in the parish of _____. At this hearing, you will be asked to answer the petition by either admitting or denying the truth of the facts stated in the petition. If you admit those facts, you may also consent to the termination of your parental rights at this hearing. If you deny any or all of those facts, you will be given a date to return for a trial. If you fail to appear, the court can terminate your rights despite your absence. If the court at the trial finds that the facts set out in the petition are true and that termination of your rights will serve the best interests of your child, the court can enter a judgment ending your rights to your child. If the judgment terminates your parental rights, you will no longer have any rights to visit or to have custody of your child, or make any decisions affecting your child. Your child will be legally freed to be adopted by someone else. This is a very serious matter. You should contact a lawyer immediately so that you can be prepared for the court hearing. You have the right to hire a lawyer and to have him or her represent you. If you cannot afford to hire a lawyer, you may call the telephone number on the attached form for information concerning free legal aid. If free legal aid is not available, the court will appoint a lawyer at the scheduled hearing if the court finds that you are unable to pay some or all of the costs. Whether or not you decide to hire an attorney, you have the right to attend the hearing of your case, to call witnesses on your behalf, and to question those witnesses brought against you. If you have any questions concerning this notice, you may call the telephone number of the clerk's office which is _____."

[9] Louisiana Children's Code Article 1023(A), entitled, in part, "Service; absentee parent[,]" provides:

If the parent against whom a proceeding is instituted cannot be served in accordance with either Article 1021 or 1022, the court shall appoint an attorney at

T.R.W., her appointed counsel, and her newly enrolled counsel appeared at the answer hearing in April 2017.[10] The trial court permitted appointed counsel to withdraw at that time. The order resulting from that hearing indicates that T.R.W. was "served in Open Court with a certified copy of the Petition for Termination of Parental Rights … , accepted service, waiving any informality with regard to the manner of delivery." The order further reflects that T.R.W.'s counsel "entered a denial to the petition, which is set for trial on June 28, 2017 at 9:00 A.M."

Thus, in addition to the fact that T.R.W. did not lodge an objection below regarding a lack of notice pursuant to La.Ch.Code art. 1020, T.R.W. specifically waived any informality regarding delivery. Additionally, it is worth noting that T.R.W. was at all times represented by either appointed or retained counsel and that she made personal appearances at both the answer hearing and at the trial of the merits. She was thus provided with actual notice.

Therefore, we find that this argument lacks merit.

*Merits*

In her final argument, T.R.W. questions whether the trial court's termination of parental rights was based on adequate evidence. As noted above, the petition initiating this matter advanced grounds for termination under La.Ch.Code art. 1015(5)(a), (b), and (c). That Article indicates:

The grounds for termination of parental rights are:

. . . .

---

law as curator ad hoc for the parent and service of citation shall be made upon the curator ad hoc.

[10] Louisiana Children's Code Article 1025.1(A) provides that "[t]he court shall require the parent to appear in person to answer the petition within fifteen days after the filing of the petition."

(5)     Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:

(a)     For a period of at least four months as of the time of the hearing, despite a diligent search, the whereabouts of the child's parent continue to be unknown.

(b)     As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.

(c)     As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating him for any period of six consecutive months.

Importantly, La.Ch.Code art. 1035 provides that "[t]he petitioner bears the burden of establishing each element of a ground for termination of parental rights by clear and convincing evidence."

In ruling, the trial court reasons reflect a finding that the ground of abandonment, pursuant to La.Ch.Code art. 1015(5)(b) and (c)[11] was proven, with the trial court explaining:

The undisputed evidence presented at trial indicated that [T.R.W.] has not provided any support for [C.D.W.] and has failed to communicate or visit with [C.D.W.] for a period far in excess of six months. [C.D.W.] was removed from [T.R.W.]'s care and placed in the State's custody due to crack cocaine in her and [C.D.W.]'s system at birth. [C.D.W.] went straight from the hospital into the State's custody and the [home of J.B. and M.B.]. [T.R.W.] has never had custody of [C.D.W.] and he is now 7 (almost 8) years old. She was given a case plan but never worked it.

[T.R.W.] acknowledged at trial that she has made no effort to contact [J.B. and M.B.] to see [C.D.W.] prior to the petition to terminate her rights was filed. She also admits that she has never provided any financial support for [C.D.W.] either.

_____

[11] While the petition was brought pursuant to La.Ch.Code art. 1015(5)(a), (b), and (c), the trial court's reasons for ruling do not reflect a particularized ruling as to subparagraph (a) and, as discussed below, T.R.W. attended the termination hearing.

Based on the foregoing, the Court finds that [J.B. and M.B.] have proven by clear and convincing evidence that [T.R.W.] has abandoned [C.D.W.] by placing him in the care of another and has failed to provide support for him and failed to visit or communicate with him for a period in excess of six months.

On appeal, we review the trial court's determination regarding whether parental rights should be terminated pursuant to the manifest error standard. *See State ex rel. H.A.S.*, 10-1529 (La. 11/30/10), 52 So.3d 852. Having done so, we find no such error and maintain the trial court's finding.

As set forth above, La.Ch.Code art. 1015(5)(c) provides that: "As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months." The petition instituting this matter was filed on February 1, 2017. M.B. testified that she and her husband obtained sole custody of C.D.W. following a December 2015 custody hearing. When asked by counsel whether T.R.W. made "any effort to see [C.D.W.]" from that time until the filing of the petition, M.B. explained: "I've never had a phone call from her, and the only time she's even been mentioned is the time that she showed up at his school and she showed up at gymnastics leading to the protective order that's in place."

Entered as an exhibit at the termination hearing, the protective order resulting from the attempted contact[12] as described by M.B. was issued in July

---

[12] The following exchange between counsel and M.B. provides some context to the events leading to the protective order:

Q.    So, that was the protective order when she showed up and attempted to have him leave with her instead of staying in [J.B.'s] and your custody.

A.    Right.

Q.    Before she showed up that day had she made any effort to contact you and [J.B] to say I'd like to see him, I want to do whatever it takes to be able to visit with him, let me talk to you about what I've done that should make you feel comfortable, she never contacted you with anything like that?

2016. Thus, and in addition to the record otherwise demonstrating sustained periods of no contact, it follows that the February 2017 filing of the subject petition occurred more than six consecutive months after the underlying attempted contact. In her brief to this court, T.R.W. does not dispute a lack of contact following that period, but asserts that such a lack of significant contact as described by La.Ch.Code art. 1015(5)(c) "would have been unavoidable since the parties had sought a Protective Order, preventing her contact with C.D.W. in any way or shape." Yet, T.R.W. admitted at trial that she had been neither aware of nor served with the protective order prior to the termination hearing. On this point, M.B. testified that they "tried to serve her. We went through all the court procedures. We hired a special process server, and no one could find her, including her mother." Given this testimony from both T.R.W. and M.B., the trial court was not manifestly erroneous in rejecting the defense of the protective order in the assessment of whether T.R.W. "failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months."

We similarly find unpersuasive T.R.W.'s argument in brief that "any contact between [T.R.W.] and [J.B. and M.B.] may have been attempted by telephone or mail; [T.R.W.] confirmed that she felt as though she was not able to communicate

---

A.   No, sir. I've never had any other contact with her at all.

Q.   Was it that same day or near about when she showed up at [C.D.W's] school without notifying you and [J.B.] as his custodians and attempted to see him without your knowledge and consent at the school?

A.   Correct. The school called me and let me know that [T.R.W.] had been there with old paperwork and attempted to see [C.D.W.]. The school said they did not allow that. And then there was a separate incident about a month later where she showed up at gymnastics as [J.B.] was taking the children to gymnastics.

11

with [J.B. and M.B.] per their express desires." In this regard, the transcript reveals the following through the questioning of T.R.W. by her counsel:

Q. Thank you. There's been a lot of talk and information about whether you have made success in the therapeutic intervention at The Women's Home.[13]

A. Yes, ma'am.

Q. Tell me about if the Women's Home has given you any directions about how to approach having a relationship with your son.

A. The Women's Home actually focuses on the women and your trauma and your issues, substance abuse related. They told me to seek a relationship with my son but make sure I stay safe within the realms of what I was allowed to do.

Q. What did that mean for you as far as staying safe as to what you could do?

A. Well, I really couldn't do too much of anything but try to call, you know, and try to foster that relationship, but I was not, you know, aware that I wasn't supposed to be calling, I guess.

Q. Did you attempt to write any letters to him?

A. I have some letters at home that I wrote when I was in treatment in 2015, but I've never mailed them. I didn't have any address to mail them to.

Q. So, you weren't aware of an address for [J.B. and M.B.] in order to contact them?

A. No, ma'am.

Q. Okay. Did your mom have any information about their address so that you could send information to him?

A. I never asked her.

Notwithstanding the 2015 timeline spoken of by T.R.W., it is clear that she did not complete her attempt to communicate by correspondence.

---

[13] T.R.W. explained that, at the time of trial, she was living and seeking treatment at The Women's Home, a residential facility. The record indicates that she entered the facility in December 2016.

Also, and although T.R.W. references purported attempts at communication by telephone, the following colloquy between counsel for C.D.W. and T.R.W. indicates that any such attempts occurred after the filing of the petition for termination:

> Q.    You made no effort to contact [J.B or M.B.] as of February 1, 2017, from the trial date of December 10 to February 1, 2017, you never tried to contact [J.B. or M.B.] to see [C.D.W.]?
>
> A.    I called.  I don't think it was before February of this year, though, but I called.

When questioned as to the timing of these calls, T.R.W. again explained that: "I don't remember exactly what month it was, but I did call.  I called like twice, and I know my daughter called a couple of times."  Finally, the transcript reveals the following colloquy after T.R.W. was recalled to the stand:

> Q.    So, whatever effort you made to reach out to [J.B. or M.B.] about your son, you didn't take until after this petition was filed on February 1, 2017.
>
> A.    Correct.

Additional questioning as to the nature of the alleged calls revealed the passive nature of any such attempt at communication.  When asked whether she "ever hear[d] anyone on the other side of the phone when [she] called[,]" T.R.W. responded:

> A.    Yes, ma'm.  [J.B.] answered.
>
> Q.    Did you have a conversation with him during those times?
>
> A.    Yes.  I asked him could I speak - - I said hello, how are you, and he asked who this was, and I told him it was [T.R.W.], and I asked to speak to [C.D.W.].
>
> Q.    Did he say you could speak with him?
>
> A.    No, ma'am he did not.

13

In contrast, and while J.B. did not testify at the hearing, M.B. denied that she had received such a call and explained that: "Since we started the initial court proceedings, about two years ago, I've never heard from [T.R.W.]"

Given this evidence, and the credibility determinations attendant thereto, we find no manifest error in the trial court's factual determinations that the ground for termination as set forth in La.Ch.Code art. 1015(5)(c) was proven by clear and convincing evidence.

We observe here that T.R.W. additionally argues that the trial court erred in its finding that she failed to provide support for C.D.W., thus constituting abandonment pursuant to La.Ch.Code art. 1015(5)(b). On this point, T.R.W. does not contend that she provided such support or that she was unable to do so. In fact, she conceded at trial that she provided no support to either the State or to J.B. and M.B. Rather, T.R.W. asserts that "[a]n obligation of support is not in existence against [her] and per testimony of [J.B. and M.B.] was not warranted as they were able to meet all the financial needs of the minor child and averred to this through submission of their financial documents." Notwithstanding this argument, we note that "[t]he State need establish only one ground" under La.Ch.Code art. 1015. *See State ex rel. H.A.S.*, 52 So.3d at 860. As observed, the record supports the trial court's determination that the ground of abandonment due to failure to communicate pursuant to La.Ch.Code art. 1015(5)(c) was proven by clear and convincing evidence. As such, we do not further comment as to this alternative ground.

Of course, a finding as to a ground for termination of parental rights does not end the inquiry before the court. Rather, the trial court "must also determine whether the termination is in the best interest of the child." *State in the Interest of*

14

*C.F.*, 17-1054, p. 11 (La. 12/6/17), 235 So.3d 1066, 1072. *See* La.Ch.Code art. 1037.[14] *See also* La.Ch.Code art. 1039.[15]

The trial court extensively addressed the best interests of the child analysis, explaining that:

> In summary, the testimony indicates, and [T.R.W.] acknowledges, that she has had a severe drug problem since before [C.D.W.'s] birth. However, [her] most recent stint in rehab from June – September, 2016, has proven successful so far. After she was discharged from rehab, she went into a half-way program where she continues to reside. She has been clean for all of this time. She is working at the program and is looking at returning to school. [T.R.W.'s] determination and commitment to rehab this time are to be commended. The Court hopes that she will continue in her treatment and recovery.
>
> However, the Court's focus must be on what is in the best interests of [C.D.W.]. [He] has been in the care of [J.B. and M.B.] since his birth, other than a period of time that he resided with his maternal grandmother. [J.B. and M.B.] have provided [C.D.W.] with a safe and stable home. More particularly, [J.B. and M.B.] have ensured that his medical and mental health needs are met.
>
> [C.D.W.] has been diagnosed with oppositional defiant disorder, adhd and general anxiety. [He] constantly fears that his mother is going to come and get him. Dr. Patricia Post, who has worked closely with [C.D.W.], testified that he has issues that he will have to deal with for a long time. However, she explained that

---

[14] Entitled "Findings and contents of termination judgment; form[,]" La.Ch.Code art. 1037(B) provides that:

> When the court finds that the alleged grounds set out in any Paragraph of Article 1015 are proven by the evidentiary standards required by Article 1035 and that it is in the best interests of the child, it shall order the termination of the parental rights of the parent against whom the allegations are proven. The court shall enter written findings on both issues. The consideration of best interests of the child shall include consideration of the child's attachment to his current caretakers.

[15] Louisiana Children's Code Article 1039(B) further references the best interests of the child analysis and provides, in pertinent part, that: "If the court finds that the alleged grounds are not proven in accordance with the evidentiary standards set forth in Article 1035 *or if the court finds that termination of parental rights is not in the best interests of the child*, it shall enter written findings on both issues and may . . . ."

15

[C.D.W.] has made progress while in the care of [J.B. and M.B.] He is happier and more expressive. He is more adjusted with [J.B. and M.B.] and not quite as anxious. [C.D.W.] has indicated to Dr. Post that he wants to continue residing with his mother and father, [J.B. and M.B.] He also wants his sister to come live with them. *La. Ch. C. art. 1037(A)* states that the Court "shall include consideration of the child's attachment to his current caretakers."

Given all that [C.D.W.] has been through, his age and mental health needs, it is important for him to have a stable and permanent home and caregivers who will ensure that [C.D.W.] obtains the services necessary for his success. There is no doubt in the Court's mind that [J.B. and M.B.] will ensure that [C.D.W.] obtains what he needs as evidenced by everything they have provided for him to date. With [J.B. and M.B.], [C.D.W.] will be provided with a safe and secure environment that will ensure his well-being.

Considering all of the reasons discussed above, the Court finds that it is in [C.D.W.]'s best interest that the parental rights of his mother, [T.R.W.], be terminated in order to achieve permanency and stability for [C.D.W.].

Recognizing [T.R.W.'s] recent successes in her recovery, when the Court considers her years of drug use and inability to parent [C.D.W.] and the length of time that he has been stable with [J.B. and M.B.], the Court finds that it is [C.D.W.]'s best interest to terminate [T.R.W.]'s parental rights to [him]. The testimony indicates that [he] clearly has a close bond with [J.B. and M.B.]. When the Court considers the age of [C.D.W.], his attachment to his current caretakers, as well as his special needs, the Court is convinced that [C.D.W.'s] best interests mandate that the parental rights of his mother, [T.R.W.], be terminated.

Following review, and noting that T.R.W. does not provide specific argument challenging the trial court's findings as to the child's best interests, we again leave this finding undisturbed. The trial court's ruling is supported by the record. In addition to T.R.W.'s long struggles with drug addiction, it is important to note that C.D.W. has not been in her custody since his birth in 2009. Instead, J.B. and M.B. have been continuously in his life since that time, doing so for the most recent period of C.D.W.'s life as his sole custodians. As remarked upon by the trial court, testimony indicates that C.D.W. identifies them as his parents.

16

Accordingly, we find that T.R.W.'s assignment challenging the merits of the termination matter are without merit.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this proceeding are assigned to the defendant—appellant.

**AFFIRMED.**